# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

Inga Jo Reyes,

      Plaintiff,

  vs.                                              Civ. No. 18-576 SCY

Nancy A. Berryhill, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 13) filed August 27, 2018, in support of Plaintiff Inga Jo Reyes' Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On November 5, 2018, Plaintiff filed her Motion to Reverse and Remand for a Rehearing With Supporting Memorandum ("Motion"). Doc. 18. The Commissioner filed a Brief in Response on January 18, 2019 (Doc. 21), and Plaintiff filed a Reply on February 18, 2019 (Doc. 23). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 6, 8, 9.

I.      **Background and Procedural Record**

Claimant Inga Jo Reyes suffers from the following severe impairments: peripheral neuropathy, spine disorders, curvature of the spine, affective disorders, diabetes mellitus, and anxiety disorders. Administrative Record ("AR") at 14. She alleges that she became disabled as of August 20, 2014. AR 11, 90. She has a high school-equivalent education and worked in the past as a restaurant server or hostess. AR 44-45, 50, 311.

On August 28, 2014, Ms. Reyes filed concurrent claims of disability under Title II and Title XVI. AR 156. Her applications were initially denied on January 23, 2015 (AR 156-57), and upon reconsideration on June 23, 2015 (AR 192-93). Administrative Law Judge ("ALJ") Michael Leppala conducted a hearing on March 30, 2017. AR 35. Ms. Reyes appeared in person at the hearing with attorney representative Michael Armstrong. *Id*. The ALJ took testimony from Ms. Reyes and an impartial vocational expert ("VE"), Phunda P. Yarbrough. AR 35, 253.

On May 8, 2017, ALJ Leppala issued a partially favorable decision. AR 11-21. He determined that Ms. Reyes' date last insured is June 20, 2015. AR 13. He found that Ms. Reyes was not disabled between August 20, 2014 and January 28, 2016, but became disabled on January 28, 2016 when she turned fifty years old. AR 12, 21. He denied the Title II application because Ms. Reyes was not disabled as of her date last insured, but granted the Title XVI application for supplemental security income beginning on January 28, 2016. AR 21. Ms. Reyes requested review of the decision denying Title II benefits. On April 19, 2018, the Appeals Council denied Ms. Reyes' request for review and upheld the ALJ's final decision. AR 1-6. On June 20, 2018, Ms. Reyes timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1. Because the parties are familiar with Ms. Reyes' medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

**II.     Applicable Law**

    A.     Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

    (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

    (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

    (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

    (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most

---

[2] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

**III. Analysis**

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). In support of her Motion to Remand, Ms. Reyes argues that the ALJ erred at step 5 of the sequential evaluation process by failing to explain a conflict between the testimony of the VE, which the ALJ relied on to identify jobs that Ms. Reyes can perform given her residual functioning capacity, and the Department of Labor's Dictionary of Occupational Titles (DOT). The Court concurs: under binding Tenth Circuit precedent, a conflict existed and so to find Ms. Reyes could perform work the DOT indicates she could not perform given her RFC, the ALJ was required to provide an adequate explanation. Because the ALJ did not offer an explanation, the Court must remand for the ALJ to do so.

Based on the testimony of the VE, the ALJ identified three jobs that Ms. Reyes can perform:

- an addresser 209.587-010, sedentary, unskilled (SVP 2) work, with approximately 28,070 such occupations existing in the national economy; or as:

- an escort building driver: DOT #919.663-022, sedentary, unskilled (SVP 2) work, with approximately 26,660 such occupations existing in the national economy; or as:

- an election clerk: DOT #205.367-030, sedentary, unskilled (SVP 2) work, with approximately 14,870 such occupations existing in the national economy.

AR 20.

The Dictionary of Occupational Titles classifies each job with a code labeled "General Educational Development" ("GED"). This classification "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Components of the Definitional Trailer, Appx. C, § III, 1991 WL 688702. "The GED Scale is

composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id.* The "reasoning" scale runs from one to six, with six signaling jobs that call for the most complex reasoning.

"Election clerk" implicates a reasoning level of three; and "escort-vehicle driver" and "addresser" are reasoning level two. *See* Dictionary of Occupational Titles, 1991 WL 671719 (election clerk); 1991 WL 687886 (escort-vehicle driver); 1991 WL 671797 (addresser). A reasoning level of three indicates a job that requires the application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and requires "[d]eal[ing] with problems involving several concrete variables in or from standardized situations." DOT, Appx. C, § III, 1991 WL 688702. Ms. Reyes argues that a job requiring this reasoning level is inconsistent with the ALJ's RFC in this case, which limits Ms. Reyes "to work where complexity of tasks is learned and performed by rote." AR 15. "She requires work with few variables [and] little judgment." *Id.*

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling (SSR) 00-4p and further clarified the ALJ's affirmative responsibility to ask about such conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

7

2000 WL 1898704, at *4.

The Tenth Circuit has also addressed the interplay between a claimant's RFC and the reasoning levels of identified jobs. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In *Hackett*, the Tenth Circuit agreed with the claimant that there is an apparent conflict between level-three reasoning and simple work restrictions. It held that an ALJ may not conclude that a claimant who is restricted to "simple and routine work tasks" can perform a reasoning-level-three job without addressing this conflict. *Id*. The Tenth Circuit recognized that remand in such circumstances is "unfortunate," and expressed concern that the conflict had not been raised at the administrative hearing. *Id.* "[H]ad this conflict been raised at that time, the ALJ could have responded by explaining or changing his ruling." *Id.* But because the issue was not raised, the conflict was unexplained, and remand was required to give the ALJ an opportunity to explain the conflict. *Id.*

The conflict between the ALJ's RFC and reasoning level three is, if anything, more apparent in this case. The ALJ determined that Ms. Reyes "requires work with *few* variables." AR 15 (emphasis added). Reasoning level three requires "[d]eal[ing] with problems involving *several* concrete variables." DOT, Appx. C, § III, 1991 WL 688702 (emphasis added). Under *Hackett* and SSR 00-4p therefore, the ALJ was required to evaluate the apparent conflict and, based on his assessment of this conflict, either (1) explain why it was reasonable to conclude that Ms. Reyes would be able to satisfy the specific characteristics of the jobs at issue despite the apparent conflict between the job-requirements and her abilities, or (2) reject the VE testimony due to the conflict. The ALJ here did neither.

In her response, the Commissioner asks the Court to excuse the ALJ's failure to conduct the above analysis because the reasoning-level code does not correspond to whether the job is

8

skilled or unskilled, but instead to the level of training and education the job requires. Doc. 21 at 15. Because Ms. Reyes has the education and prior training necessary to perform her past relevant work as a hostess, which is coded as reasoning-level four, it logically follows that she can perform "work with educational and training requirements that are *less* mentally demanding than her hostess job." *Id.* The restriction to simple, routine tasks is related to Ms. Reyes' current mental impairments, the Commissioner argues, and does not necessarily have anything to do with her past education and training. *Id.* Ms. Reyes' education and training remain the same as when she was able to perform the job of a restaurant hostess. *Id.*

This is a valid point, and one that some unpublished cases in the Tenth Circuit appear to have adopted. *See Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job . . . ."); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("Job descriptions in the Dictionary of Occupational Titles contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job. There is no genuine dispute that Mounts retained the GED to perform the jobs as an appointment clerk, escort vehicle driver, or dispatcher, as testified to by the VE."); *Sandoval v. Barnhart*, 209 F. App'x 820, 825 (10th Cir. 2006) ("[t]he adequacy of Ms. Sandoval's educational development is not in dispute"). However, these cases did not cite *Hackett*, much less reconcile their reasoning with its holding. And because they are unpublished, they are not precedential. Lower courts, therefore, must follow *Hackett* over the unpublished cases. The fact that *Hackett* did not consider this particular argument does not undermine its precedential effect. As Ms. Reyes explains, the Commissioner's argument in this case based on Ms. Reyes' past work was equally applicable to

9

the claimant in *Hackett*. Doc. 23 at 9-10 (setting forth how the claimant in *Hackett* also had a history of successfully performing reasoning-level three occupations prior to her alleged period of disability). Ultimately, the Commissioner's position amounts to an argument that *Hackett* was wrongly decided and does nothing to address whether *Hackett* is controlling.

The Commissioner also argues that *Hackett* "did not hold that Reasoning Development 3 was necessarily inconsistent with simple and routine work, only that it *appeared* to be." Doc. 21 at 16. "Thus, the *Hackett* Court did not foreclose the possibility that the ALJ could find on remand that there was no such conflict." *Id.* It is true that *Hackett* does not foreclose the possibility that some claimants who are restricted to simple work may be able to perform some jobs that require a reasoning level of three. The Tenth Circuit did, however, squarely hold that, unless the ALJ explains why a conflict does not exist, a conflict exists. *Hackett*, 395 F.3d at 1176. Thus, even if the Court were to accept the Commissioner's argument that an ALJ may disregard the reasoning level in deciding whether an educated individual like Ms. Reyes has the ability to work in a given occupation, the Court would still have to remand to allow the ALJ to engage in the analysis of whether doing so in this case is appropriate. On remand, the ALJ is free to explain the conflict along the lines the Commissioner suggests, or to reject the VE testimony altogether as Ms. Reyes suggests. But, at this stage, the ALJ has offered no explanation and so there is nothing to review.

In her reply brief, Ms. Reyes argues that this error is not harmless. Doc. 23 at 10. She also points out that the Commissioner did not even make an argument for harmless error in the response brief. *Id.* The Tenth Circuit has indicated that a court may invoke a harmless error analysis on behalf of the Commissioner where "the record is not overly long or complex, harmlessness is not debatable, and reversal would result in futile and costly proceedings." *Seever*

*v. Barnhart*, 188 F. App'x 747, 752 n.1 (10th Cir. 2006) (citing *Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006)).

It would be inappropriate to invoke harmless error on the Commissioner's behalf in this instance, because harmlessness with respect to this issue is highly debatable. Harmless error applies if "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). In this context, a harmless error analysis would ask whether, after striking the job of election clerk, the number of jobs identified in the other two positions are still so numerous that a reasonable factfinder would be compelled to find that they exist in significant numbers in the national economy. *Id.*; *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Here, once the job of election clerk is subtracted from the total number of jobs the ALJ found sufficient in this case, the remaining number of jobs amounts to 54,730. The only published guidance available from the Tenth Circuit is that 1.34 million jobs is a sufficient number to affirm on the basis of harmless error. *Raymond*, 621 F.3d at 1274. Neither unpublished decisions from the Tenth Circuit nor decisions from judges in this district have reached a consensus on an appropriate number to satisfy harmless error review. *See Roybal v. Berryhill*, No. 17-1045 JHR, 2019 WL 318387, at *6-7 (D.N.M. Jan. 24, 2019); *Montoya v. Berryhill*, No. 16-1089 SCY, 2018 WL 1580296, at *3 (D.N.M. Mar. 28, 2018) (providing an overview and collecting cases). This is not, then, the proper case to engage in a harmless error review where the Commissioner did not raise the issue.

The Court will not address Ms. Reyes' remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## IV. Conclusion

For the reasons stated above, Ms. Reyes' Motion to Motion to Reverse and/or Remand (Doc. 24) is **GRANTED.**

_____
**STEVEN C. YARBROUGH
United States Magistrate Judge
Presiding by Consent**